UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

VALENTIN CONCHA,

                    Plaintiff,

        -against-

PURCHASE COLLEGE STATE UNIVERSITY
OF NEW YORK, THOMAS J. SCHWARZ,
GEORGE HALLIDAY, KATHLEEN
FARRELL, RICARDO ESPINALES,
EDWARD TIGHE, JOEL AURE, with all
individuals in their individual capacity,

                    Defendants.

------------------------------------------------------------X

**OPINION AND ORDER**

17 Civ. 8501 (JCM)

       Plaintiff Valentin Concha ("Plaintiff") brings this action pursuant to Titles VI and VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, and the New York State Human Rights Law ("NYSHRL") against Defendants Purchase College State University of New York ("SUNY Purchase"), Thomas J. Schwarz, George Halliday, Kathleen Farrell, Ricardo Espinales, Edward Tighe, and Joel Aure (collectively, the "Defendants") alleging employment discrimination and retaliation. (Docket No. 1).  Before the Court is Defendants' motion for judgment on the pleadings pursuant to Rule 12(c) and for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Motion"). (Docket No. 40).  Plaintiff opposed Defendants' Motion, (Docket No. 50), and Defendants replied, (Docket No. 53).  For the reasons set forth below, Defendants' Motion is granted.[1]

---

[1] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 27).

## I. BACKGROUND

### A. Procedural Background

On November 2, 2017, Plaintiff commenced this action against Defendants seeking damages for race and national origin discrimination and retaliation relating to his probationary employment at SUNY Purchase. (Docket No. 1). Following the completion of discovery, Defendants filed a motion for judgment on the pleadings and for summary judgment, (Docket No. 40), accompanied by a memorandum of law, ("Def. Br.") (Docket No. 45), four declarations with exhibits, (Docket Nos. 41–44), and a statement of facts pursuant to Local Civil Rule 56.1, ("Def. 56.1") (Docket No. 46). Plaintiff filed a memorandum of law in opposition to Defendants' Motion, ("Pl. Br.") (Docket No. 50), accompanied by two declarations with exhibits, (Docket Nos. 48–49), and a counterstatement of facts pursuant to Local Civil Rule 56.1, ("Pl. 56.1") (Docket No. 47). Defendants filed a reply memorandum of law, ("Def. Reply") (Docket No. 53), and a response to Plaintiff's counterstatement, ("Def. 56.1 Reply") (Docket No. 54).

### B. Facts

The following facts are gathered from the parties' Rule 56.1 statements and counterstatements, the exhibits attached to the parties' submissions, and the declarations submitted by the parties in support of their contentions.[2] The facts are construed in the light most favorable to Plaintiff as the non-moving party. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018). The following facts are not in dispute, unless otherwise noted.

---

[2] All page number citations to the record refer to the ECF page number unless otherwise noted.

### i. The Parties

Plaintiff, who self-identifies as Peruvian, worked at SUNY Purchase from November 7, 2015 to February 17, 2016 in the Grounds Department. (Def. 56.1 at ¶ 1).  During Plaintiff's employment, Thomas Schwarz was the President of SUNY Purchase. (*Id.* at ¶ 3).  At all relevant times, Kathleen Farrell was the Director of Human Resources, (*id.* at ¶ 5), Ricardo Espinales was the Assistant Director of Human Resources, (*id.* at ¶ 6), and Edward Tighe was a Human Resources Labor Relations Specialist at SUNY Purchase, (*id.* at ¶ 7).  Joel Aure was the Chief Diversity Officer, Title IX Coordinator, and Affirmative Action Officer at SUNY Purchase. (*Id.* at ¶ 8).  George Halliday was the Supervisor of the Grounds Department during Plaintiff's employment. (*Id.* at ¶ 4).

### ii. Plaintiff's Employment at SUNY Purchase

In February 2015, Plaintiff applied to be a Campus Worker in the Grounds Department at SUNY Purchase. (Def. 56.1 at ¶ 9).  The position entailed performing a variety of unskilled tasks related to the operation of the campus, including grounds, parking, and maintenance services. (*Id.* at ¶ 10).  Assistant Director Ricardo Espinales offered the Campus Worker position to Plaintiff, (*id.* at ¶ 15), and Plaintiff started working at SUNY Purchase on a probationary basis on November 7, 2015, (*id.* at ¶ 16).[3]  Probationary employees served a probationary period of up to 52 weeks and received evaluations approximately every two months. (*Id.* at ¶¶ 28–29).  Halliday was responsible for performing evaluations of Grounds Department employees, including Plaintiff. (*Id.* at ¶ 30).

During Plaintiff's employment at SUNY Purchase, there were thirteen employees in the Grounds Department, eight of whom were Hispanic. (Def. 56.1 at ¶ 18).  Halliday testified that

---

[3] At the time, Plaintiff also held a full-time position at the Westchester Hilton Hotel. (Def. 56.1 at ¶ 17).

Plaintiff's co-workers characterized Plaintiff's work performance negatively and complained about him. (Halliday Dep.[4] at 83–84). For example, Santiago Linares, who was a Senior Grounds Worker, told Halliday that Plaintiff was not a good worker and was unwilling to perform the typical work that employment in the Grounds Department entailed.[5] (Linares Dec.[6] at ¶¶ 3–4). Another Senior Grounds Worker, Joseph Esposito, informed Halliday that Plaintiff's performance was lacking, and that Plaintiff did not want to work.[7] (Halliday Dep. at 86–87).

Furthermore, Michael Koran, one of Plaintiff's co-workers, testified that Plaintiff threw a leaf blower at him and "told [him] to go fuck [him]self."[8] (Def. 56.1 at ¶ 22). Koran notified Halliday about this incident. (Pl. 56.1 at ¶ 18); (Def. 56.1 at ¶ 23). Esposito also told Halliday about Plaintiff "cursing, fighting, and throwing equipment at [Koran]." (Def. 56.1 at ¶ 22). In response, Halliday instructed Koran to report the incident to Human Resources. (Def. 56.1 at ¶ 23). Koran met with Espinales on January 4, 2016 and told him about the leaf blower incident with Plaintiff. (Id. at ¶ 24). At Espinales' direction, (id. at ¶ 25), Koran prepared a letter, which stated, inter alia, that Plaintiff "practically threw the blower on the ground and told me to go fuck myself." (Id. at ¶ 26). On January 5, 2016, Koran e-mailed the letter to Espinales. (Id.).

On January 27, 2016, Halliday sent Espinales a draft Probationary Evaluation Report ("Evaluation Report") regarding Plaintiff's employment. (Def. 56.1 at ¶ 31); (Docket No. 41-14).

---

[4] Refers to George Halliday's deposition transcript. (Docket No. 41-3). Citations to deposition transcripts refer to the deposition page rather than the ECF page number.

[5] Plaintiff disputes Linares' characterization of his work performance. (Pl. 56.1 at ¶ 2). However, he does not dispute that Linares told Halliday that he was not a good worker. (Pl. 56.1 at ¶ 19).

[6] Refers to the Declaration of Santiago Linares. (Docket No. 42).

[7] Plaintiff disputes this contention as inadmissible hearsay to the extent it is relied upon for the truth of the matter asserted. (Docket No. 47 at ¶ 21). The Court does not rely on this statement for the truth of the matter asserted, but rather to show that Halliday was aware of this statement.

[8] Plaintiff denies doing this, but admits that Halliday was informed of this alleged incident. (Pl. 56.1 at ¶ 21).

Under the categories, "Quality of Work," "Quantity of Work," "Ability to be Trained," "Attitude Toward Job," and "Relations with Other[s]," Halliday noted that Plaintiff's performance was "Unsatisfactory." (Def. 56.1 at ¶ 32); (Docket No. 41-14). Under the categories, "Appearance," "Attendance," and "Punctuality," Halliday indicated that Plaintiff's performance was "Satisfactory." (*Id.*). Halliday also wrote in the "Comments" section, "Misconduct, [Plaintiff] disrupts Dept. with abusive behavior and language affecting morale and performance of others. Questions work duties to supervisor as to why he has to perform them." (*Id.*). The "misconduct" referred to Koran's allegation that Plaintiff threw a leaf blower at him. (Pl. 56.1 at ¶ 43). In Section III of the draft Evaluation Report, Halliday recommended that Plaintiff be terminated. (Def. 56.1 at ¶ 32); (Docket No. 41-14).

After reviewing Halliday's draft, Human Resources requested that Halliday revise the "Comments" section because the level of detail provided was not required to terminate a probationary employee. (Def. 56.1 at ¶ 33); (Pl. 56.1 at ¶ 48). Rather, the unsatisfactory rankings were enough to terminate Plaintiff. (Def. 56.1 at ¶ 33). Moreover, Human Resources would be required to investigate the allegations of abusive behavior if it was listed in the Evaluation Report. (Farrell Dep.[9] at 15, 22). In accordance with this request, Halliday revised the "Comments" section to state, "Question [*sic*] work duties to supervisor as to why he has to perform them." (Def. 56.1 at ¶ 34); (Docket No. 41-15).

On February 1, 2016, Plaintiff met with Halliday to discuss his Evaluation Report. (Def. 56.1 at ¶ 35). The meeting lasted approximately 45 minutes to one hour. (Concha Dep.[10] at 75). At the end of the meeting, Plaintiff signed and dated the Evaluation Report. (Def. 56.1 at ¶ 35).

---

[9] Refers to Kathleen Farrell's deposition transcript. (Docket No. 41-4).

[10] Refers to Plaintiff's deposition transcript. (Docket No. 41-8).

The parties dispute whether the Evaluation Report was completely filled out when Plaintiff signed it. (*Id.*). Defendants maintain that the box in Section III recommending Plaintiff's termination was checked. (*Id.* at ¶ 34). Plaintiff denies this claim, arguing that Halliday gave him an incomplete Evaluation Report, (Pl. 56.1 at ¶¶ 65–67), devoid of any checkmarks indicating an unsatisfactory overall evaluation or a recommendation of termination, (Concha Dep. at 92–94). Moreover, Plaintiff claims that Halliday never told him there were complaints about his job performance. (Pl. 56.1 at ¶ 63).

Halliday did not have the authority to unilaterally terminate Plaintiff's employment. (Def. 56.1 at ¶ 36). Ultimately, Kathleen Farrell or another member from Human Resources had to obtain the approval of Thomas Schwarz, the President of SUNY Purchase, to terminate probationary employees. (Schwarz Dep.[11] at 7–8, 15). On February 9, 2016, Ricardo Espinales and Edward Tighe met with Plaintiff and informed him that he was being terminated effective February 17, 2016. (Def. 56.1 at ¶ 38). Additionally, Plaintiff received a letter from Kathleen Farrell notifying him of the conditions of his termination. (Docket No. 41-16).

Plaintiff contends that there was favoritism within the Grounds Department during his employment.[12] (Pl. 56.1 at ¶¶ 5–12). Plaintiff claims that: (i) Halliday and other supervisors did not reprimand non-Hispanic employees for arriving late, (*id.* at ¶ 5); (ii) Halliday would direct Hispanic employees to work outside in cold weather, while non-Hispanic employees remained inside, (*id.* at ¶ 6); (iii) Hispanic employees were required to clean the non-Hispanic employees' work areas in addition to their own, (*id.* at ¶ 7); (iv) Hispanic employees were given harder work

---

[11] Refers to Thomas Schwarz's deposition transcript. (Docket No. 41-2).

[12] Defendants dispute this contention and argue that Plaintiff relies solely on his own deposition testimony and declaration, both of which "are 'too incredible to be believed by reasonable minds.'" (Def. 56.1 Reply at 3) (quoting *Schmidt v. Tremmel*, No. 93-CV-8588(JSM), 1995 WL 6250, at *3 (S.D.N.Y. Jan. 4, 1995)).

assignments and provided with older tools than the non-Hispanic employees, (*id.* at ¶¶ 8–10);

and (v) Koran, a non-Hispanic employee, acted as if he was Plaintiff's superior even though they

held the same job title, (*id.* at ¶ 12).

### iii. Plaintiff's Application for a Position as a Plant Utilities Helper

While still a probationary employee with the Grounds Department, Plaintiff applied for a

position as a Plant Utilities Helper at SUNY Purchase. (Def. 56.1 at ¶ 39). Plaintiff was selected

for an interview with Tom Kelly, Corey Dawkins, and Henryk Konys, who were members of the

Plant Utilities Helper search committee. (*Id.* at ¶¶ 40–41). Following Plaintiff's interview, the

committee did not recommend Plaintiff for the position. (*Id.* at ¶ 42). Dawkins and Konys noted

that Plaintiff had another job that conflicted with the open Plant Utilities position. (*Id.* at ¶¶ 43–

44). Kelly indicated he did not recommend Plaintiff for the position because he was recently

released by the Grounds Department. (*Id.* at ¶ 45).

### iv. Investigation of an Anonymous Discrimination Complaint

On December 2, 2015, Human Resources received an anonymous complaint alleging

Halliday and two other employees discriminated against Hispanic employees in the Grounds

Department. (Def. 56.1 at ¶ 47); (Docket No. 41-19); (Docket No. 41-22). Plaintiff claims that

he did not make the complaint. (Def. 56.1 at ¶ 48). Human Resources forwarded the complaint

to Joel Aure, SUNY Purchase's Affirmative Action Officer, to investigate the allegations. (*Id.* at

¶ 49). Aure interviewed all available employees in the Grounds Department, (*id.* at ¶ 53),

including Plaintiff on February 1, 2016, (*id.* at ¶ 54). Thereafter, Aure interviewed Halliday. (*Id.*

at ¶ 52). During the meeting with Aure, Plaintiff did not convey any concerns about retaliation.

(*Id.* at ¶ 56). Furthermore, Aure did not discuss the investigation with anyone while it was

pending to maintain the privacy and integrity of the investigation. (*Id.* at ¶ 51). Nor did Aure

share anything that Plaintiff disclosed during their meeting with anyone until after the instant action was commenced. (*Id.* at ¶ 61).

After the investigation was completed, Aure prepared a report summarizing his findings for President Schwarz, dated April 1, 2016. (Def. 56.1 at ¶ 57). The report noted that many of the Hispanic employees felt they did not have access to certain equipment or an opportunity to be trained to use the equipment. (Docket No. 41-22). A few of the interviewees additionally stated that the Hispanic employees in the Grounds Department seemed to be segregated from the non-Hispanic employees. (*Id.*). The report further indicated that certain employees felt that Halliday favored two non-Hispanic employees over others. (*Id.*). Ultimately, the report recommended further review by Human Resources, but concluded that "[t]here is no evidence to suggest that Halliday intended to treat any of his supervisees differently from others due to race, ethnicity, or English fluency." (*Id.*). In addition, the report concluded that Halliday's "knowledge of these matters, inaction, and possible inadvertent contribution to them . . . are problematic and warrant further review." (*Id.*).

On May 10, 2016, Espinales and Tighe met with Halliday, Steven Dorso, who was the Director of Facilities, and Corey Dawkins, who was SUNY Purchase's Business Manager, to discuss the anonymous complaint. (Def. 56.1 at ¶ 60). During this meeting, Espinales and Tighe discussed recommendations made to address issues uncovered during the investigation. (Docket No. 41-23). These recommendations included establishing an equipment training program and ensuring that employees were "routinely cross paired" with other employees on job assignments. (*Id.*). On May 19, 2016, Espinales sent a summary of the meeting to Farrell. (*Id.*).

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of demonstrating that it is entitled to summary judgment.[13] *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583(LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012) (internal quotation and citation omitted).

In reviewing a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150–51 (2000). The Court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). If the moving party meets this initial burden, the burden then shifts to the non-

---

[13] Defendants alternatively move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Defendants' Motion, however will be treated as one for summary judgment under Fed. R. Civ. P. 56 because "matters outside the pleading have been presented to and considered by the Court." *Seabrook v. City of New York*, No. 99 Civ. 9134 (HB), 2001 WL 40767, at *1 (S.D.N.Y. Jan. 16, 2001) (internal quotation marks and citation omitted).

moving party to "present evidence sufficient to satisfy every element of the claim." *Id.* "The

non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing

that there is a genuine issue for trial,'" *id.* (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at

249–50), and "must do more than simply show that there is some metaphysical doubt as to the

material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If

the non-moving party fails to establish the existence of an essential element of the case on which

it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at

322–23.

Parties moving for and opposing summary judgment in the Southern District of New

York must also submit short and concise statements of facts, supported by evidence that would

be admissible at trial. Local Civ. R. 56.1. The opposing party must specifically controvert the

moving party's statement of material facts, or the moving party's facts will be deemed admitted

for purposes of the motion. Local Civ. R. 56.1(c); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412,

418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the

court to conclude that the facts asserted in the statement are uncontested and admissible."].

However, uncontested facts cannot be deemed true simply by their assertion in a Local Rule 56.1

statement; the Court is free to disregard the assertion in the absence of citations or where the

cited materials do not support the factual assertions in the statements. *Holtz v. Rockefeller & Co.*,

258 F.3d 62, 73 (2d Cir. 2001). Nevertheless, the Court is "not required to consider what the

parties fail to point out." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000)

(internal quotation marks and citation omitted).

## III. DISCUSSION

Plaintiff brings eight causes of action against Defendants: (1) discrimination pursuant to Title VI and 42 U.S.C. § 2000(d); (2) discrimination pursuant to Title VII and 42 U.S.C. § 2000(e); (3) discrimination pursuant to 42 U.S.C. § 1983; (4) discrimination pursuant to the NYSHL and New York State Executive Law § 296; (5) retaliation pursuant to Title VI and 42 U.S.C. § 2000(d); (6) retaliation pursuant to Title VII and 42 U.S.C. § 2000(e); (7) retaliation pursuant to 42 U.S.C. § 1983; and (8) retaliation pursuant to the NYSHL and New York State Executive Law § 296. (Docket No. 1).

### A. Abandoned Claims

Defendants argue that Plaintiff has abandoned some of his claims by failing to respond to six grounds on which Defendants moved for dismissal. (Def. Reply at 5–7). The Court finds that Plaintiff did not oppose five of the six grounds highlighted by Defendants in their Reply, (*see generally* Pl. Opp.); (Def. Reply at 6–7). "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003); *see Douglas v. Victor Capital Group*, 21 F. Supp. 2d 379, 393 (S.D.N.Y.1998) (collecting cases). Given that Plaintiff did not oppose or address some of Defendants' grounds for dismissal, the following claims are dismissed from this action: (1) Plaintiff's Title VI claims in their entirety; (2) Plaintiff's Title VII discrimination claims against the individual defendants; (3) Plaintiff's § 1983 and NYSHRL claims against SUNY Purchase;[14] (4) Plaintiff's discrimination claim based on the denial of his application for the position of Plant Utilities

---

[14] Plaintiff responded to the applicability of the Eleventh Amendment's bar against individual defendants, but not SUNY Purchase. (Pl. Br. at 7).

Helper; and (5) Plaintiff's Title VII and NYSHRL retaliation claims against all the individual defendants.[15]

Accordingly, Plaintiff's remaining claims are: (1) § 1983 and NYSHR discrimination against the individual defendants based on Plaintiff's termination; (2) Title VII discrimination against SUNY Purchase based on Plaintiff's termination; and (3) § 1983 retaliation against the individual defendants.

## B. Discrimination under Title VII, § 1983 and NYSHRL

Title VII makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise discriminate with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The NYSHRL covers analogous discriminatory acts by employers, *see* N.Y. Exec. Law § 296(1)(a), and "[e]mployment discrimination claims brought under the NYSHRL are analyzed identically to claims under . . .Title VII." *Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678, 680 n.3 (2d Cir. 2016). Additionally, "[i]n order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings On Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir. 2004) (citation omitted). Plaintiff's § 1983 discrimination claim "parallels his Title VII claim" where, as here, the color of law requirement is met.[16] *Vega v. Hempstead Union Free School District*,

---

[15] Moreover, Defendants' arguments seeking dismissal of these claims were meritorious and grounded in well settled case law in this Circuit. *See, e.g.*, Def. Br. at 21 (correctly noting that individual defendants cannot be sued under Title VII) (citing *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 n.8 (2d Cir. 2006)).

[16] There is no dispute that the individual defendants were acting under color of state law. *See Vega*, 801 F.3d at 88 ("A state employee acting in his official capacity is acting 'under color of state law.'"); *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 744 (2d Cir. 2003) ("As a general rule, state employment is ... sufficient to render the defendant a state actor.") (internal quotation marks and citation omitted).

801 F.3d 72, 88 (2d Cir. 2015). Thus, the three-part burden-shifting test laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), applies to Plaintiff's discrimination claim under all three statutes.

Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. To do this, Plaintiff must show: "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). "Once a plaintiff has established a *prima facie* case . . . [the] burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the disparate treatment." *Vega*, 801 F.3d at 83 (quoting *McDonnell Douglas*, 411 U.S. at 802). "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason 'was in fact pretext' for discrimination." *Id.*

### i. *Prima Facie* **Case**

Defendants do not contest that Plaintiff has met the first three elements of a *prima facie* case: (i) he belonged to a protected class; (ii) he was qualified for the position he held within the Grounds Department; and (iii) he suffered an adverse employment action when he was terminated. Defendants, however, argue that Plaintiff cannot show any facts giving rise to an inference of discrimination. (Def. Br. at 26).

To satisfy the fourth element of a *prima facie* case, Plaintiff must present evidence that gives rise to an inference of discrimination. "A plaintiff can support such an inference by (a) demonstrating that similarly situated employees of a different race or national origin were treated more favorably, (b) showing that there were remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus, or (c) proving that there were other circumstances

13

giving rise to an inference of discrimination on the basis of [the] plaintiff's race or national origin." *Nguyen v. Dep't of Corr. & Cmty. Servs.*, 169 F. Supp. 3d 375, 388 (S.D.N.Y. 2016) (internal quotation marks and citation omitted). "Conclusory and speculative allegations will not suffice to demonstrate discriminatory intent. Rather, a plaintiff must point to facts that suggest that the adverse employment action was motivated, at least in part, by discriminatory animus." *Id.* (internal quotation marks and citation omitted). Although, "Plaintiff's burden in establishing a prima facie case is *de minimis* . . . a party's bald assertions, without more, are insufficient to overcome a motion for summary judgment." *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 350 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).

Plaintiff alleges race and national origin discrimination based on disparate treatment between Hispanic and non-Hispanic Grounds Department employees. (Docket No. 1 at 10). To establish this claim, Plaintiff relies on: (i) his own testimony regarding his experience as a Hispanic employee; (ii) the investigation of the anonymous complaint against Halliday; and (iii) the claim that Esposito was subject to disciplinary proceedings concerning the use of a racial slur. (Pl. Br. at 11–12). At the outset, the Court notes that Esposito's alleged racial slur is not probative of racial animus because there is nothing in the record that suggests that Esposito, who was a Senior Grounds Worker, was a decisionmaker involved in Plaintiff's termination. *See Quinby v. WestLB AG,* No. 04–CV–7406, 2007 WL 3047111, at *1 (S.D.N.Y. Oct.18, 2007) ("Generally speaking, comments by nondecisionmakers cannot be used to establish discriminatory animus."). Moreover, Plaintiff fails to both identify the nature of the alleged slur and demonstrate whether it reflected a discriminatory animus. *See id.* ("comments by decisionmakers that do not bear on the decisionmaking process itself, are not pro[b]ative of discriminatory animus.").

However, Plaintiff's remaining contentions satisfy the *de minimis* burden of proof needed to demonstrate a *prima facie* discrimination claim. "A showing of disparate treatment—that is, a showing that an employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for the purposes of making out a *prima facie* case." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). Here, Plaintiff provides examples of favoritism and disparate treatment between the Hispanic and non-Hispanic employees within the Grounds Department. (Pl. 56.1 at ¶¶ 5–12); *see Village of Freeport v. Barrella*, 814 F.3d 594, 613 (2d Cir. 2016) (holding that Title VII does not "forbid[ ] favoritism, nepotism, or cronyism, *so long as it is not premised on animus against a protected class*.") (emphasis added). Plaintiff testified that Hispanic employees received harder work assignments and inferior tools than the non-Hispanic employees. (Pl. 56.1 at ¶¶ 5–12). In addition, Plaintiff claimed that Halliday did not reprimand the non-Hispanic employees for arriving late and fostered a work environment where Hispanic employees were not afforded the same opportunities as the non-Hispanic employees. (*Id.*).

SUNY Purchase's investigation of the anonymous complaint corroborates Plaintiff's allegations. Aure's report noted that the Hispanic employees in the Grounds Department felt segregated from the non-Hispanic employees. (Docket No. 41-22). Furthermore, the report concluded that Halliday favored certain employees over others. (*Id.*); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) ("A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably."). Thus, viewing the record in a light favorable to Plaintiff, the Court concludes that Plaintiff has met his burden of "establishing a *prima facie* [case of discrimination by]

showing that he was terminated under circumstances that create an inference of discrimination." *Baguer*, 2010 WL 2813632 at *7.

### ii. Legitimate, Non-Discriminatory Reason for Plaintiff's Termination

The Court next considers whether Defendants have proffered a legitimate, nondiscriminatory reason for Plaintiff's termination. Under the second step of the *McDonnell Douglas* analysis, it is the "employer's burden [] to 'clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" *Nguyen*, 169 F. Supp. 3d at 392 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)). "This 'burden of showing a legitimate[,] non-discriminatory reason for its actions is not a particularly steep hurdle.'" *Id.* (quoting *Brierly v. Deer Park Union Free Sch. Dist.*, 359 F. Supp. 2d 275, 291 (E.D.N.Y. 2005)) (alteration in original).

Defendants have met their burden of articulating a legitimate, non-discriminatory basis for terminating Plaintiff. Defendants put forward sufficient evidence showing that Plaintiff's termination was motivated by complaints about his unsatisfactory work performance. *See O'Kane v. Lew*, No. 10-CV-5325(PKC), 2013 WL 6096775, at *10 (E.D.N.Y. Nov. 20, 2013) ("Poor work performance is well-established as a legitimate, nondiscriminatory reason for firing an employee."). At least three of Plaintiff's colleagues complained to Halliday regarding Plaintiff's work performance prior to Plaintiff's termination. Santiago Linares told Halliday that: (i) Plaintiff was a bad worker; (ii) he complained about his co-workers; and (iii) he was unwilling to perform the typical tasks that Grounds Department employees performed. (Linares Dec. at ¶¶ 3–5). Linares further stated that Plaintiff did not want to report back to the Grounds Department after completing tasks. (*Id.*). Michael Koran testified that Plaintiff shouted expletives and threw a leaf blower at him while working. (Def. 56.1 at ¶ 22). Koran disclosed

this incident to Halliday and Espinales well before Halliday recommended terminating Plaintiff. Esposito also informed Halliday that Plaintiff's performance was deficient and that he did not want to work. (Halliday Dep. at 86–87). Complaints of this nature provide a legitimate, non-discriminatory basis for terminating Plaintiff's probationary employment. *See Johnson v. Schmid*, 750 F. App'x 12, 17 (2d Cir. 2018) (holding that poor job performance is a legitimate, non-discriminatory reason for firing an employee); *Yu v. N.Y.C. Hous. Dev. Corp.*, 494 Fed. Appx. 122, 126 (2d Cir. 2012) (summary order) (holding that defendants proffered legitimate, non-discriminatory reasons for plaintiff's termination, including that "he spoke to his coworkers and his supervisor in an unprofessional manner;" "he did not work well with others, particularly on team projects;" and "he failed to follow instructions and often deviated from assigned tasks and questioned the work of others, while failing to complete his own."); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (citing "profound inability to get along with her co-workers" as a legitimate non-discriminatory reason for discharge); *Bogdan v. N.Y. City Transit Auth.*, No. 02 Civ. 09587(GEL), 2005 WL 1161812, at *8, (S.D.N.Y. May 17, 2005) (multiple complaints of poor job performance were legitimate, non-retaliatory reasons for employee's termination). Accordingly, Defendants have satisfied their burden of establishing a legitimate, non-discriminatory reason for Plaintiff's termination.

### iii. Evidence of Pretext

Since Defendants have set forth legitimate, non-discriminatory reasons for their actions, the burden shifts back to Plaintiff to establish that Defendants' grounds for terminating Plaintiff are "mere pretext for actual discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). This burden is higher than the burden to establish a *prima facie* case. *Nguyen*, 169 F. Supp. 3d at 393 (quoting *Geoghan v. Long Is. R.R.*, No. 06–CV–1435, 2009 WL 982451, at *21 (E.D.N.Y. Apr. 9, 2009))."'[P]laintiff must produce not simply 'some' evidence, but sufficient

evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered

by the defendant were false, and that more likely than not discrimination was the real reason for

the employment action.'" *Id.* at 394 (quoting *Weinstock*, 224 F.3d at 42).

Plaintiff's subjective disagreement with his co-workers' characterization of his job

performance does not create a material issue of fact as to whether Defendants' asserted reasons

for Plaintiff's termination were pretextual. *See Baguer v. Spanish Broad. Sys., Inc.,* No. 04 Civ.

8393 (RJS), 2010 WL 2813632, at *8 (S.D.N.Y. July 12, 2010), *aff'd*, 423 F. App'x 102 (2d Cir.

2011) (holding that plaintiff's argument that he, in fact, "performed his job well does not create a

material question of fact as to whether [Defendant's] asserted reasons for his termination were

pretextual."); *Soderberg v. Gunther Int'l, Inc.*, 124 F. App'x 30, 32 (2d Cir. 2005) ("'it is not the

function of a fact-finder to second-guess business decisions' regarding what constitutes

satisfactory work performance.") (quoting *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1116 (2d

Cir. 1988)).  Where, as here, "plaintiff's own testimony is the only basis for contesting otherwise

strong evidence of valid, non-discriminatory reasons for termination, the evidence of 'pretext'

cannot alone support a reasonable inference of prohibited discrimination." *Rodriguez v. Am.

Friends of Hebrew Univ., Inc.*, No. 96 Civ. 0240(GEL), 2000 WL 1877061, at *5 (S.D.N.Y. Dec.

26, 2000).

In addition, the record establishes that Halliday recommended Plaintiff's termination

based on Plaintiff's poor work performance and issues with his co-workers.  Plaintiff received an

"Unsatisfactory" score in almost every category in his Evaluation Report, including "Attitude

Toward Job," "Quality of Work," and "Relations with Other[s]." (Docket No. 41-15).  Halliday's

draft of the Evaluation Report specifically referenced reports of Plaintiff's disruptive and abusive

behavior towards his co-workers. (Docket No. 41-14).  This language was removed from the

final Evaluation Report at the request of the Human Resources Department because the level of detail provided was not required to terminate a probationary employee under state law. (Def. 56.1 at ¶ 33); (Pl. 56.1 at ¶ 48). While Plaintiff refutes the accuracy of the Evaluation Report, his self-serving statements are not "the concrete evidence necessary to give rise to a reasonable inference that poor performance evaluations were suspect." *Mattera v. JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 577 (S.D.N.Y. 2010). Moreover, Plaintiff's denials "[do] not alter this analysis because '[i]n a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what 'motivated the employer;' the factual validity of the underlying imputation against the employee is not at issue.'" *Dasrath v. Stony Brook Univ. Med. Ctr.*, No. 12-CV-1484 SJF SIL, 2015 WL 1223797, at *13 (E.D.N.Y. Mar. 17, 2015) (quoting *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006)).

Plaintiff further identifies alleged inconsistencies in Defendants' proffered reasons for his termination. (Pl. Br. at 13–16). Plaintiff argues that Defendants' reliance on the leaf blower incident is problematic because there is a discrepancy between Koran's testimony and his written report. Koran testified that Plaintiff threw the leaf blower at him and told him to go fuck himself, (Def. 56.1 at ¶ 22), whereas his written statement states that Plaintiff "practically threw the blower on the ground and told me to go fuck myself," (*id.* at ¶ 26). The Court disagrees that Koran's characterizations of the incident are so inconsistent that they are "unworthy of credence." *Droutman v. New York Blood Ctr.*, Inc., No. 03-CV-5384(DRH/ARL), 2005 WL 1796120, at *8 (E.D.N.Y. July 27, 2005) (internal quotation marks and citation omitted). Even if Plaintiff did not throw the leaf blower or commit the other acts complained of by his co-workers, the record is devoid of any evidence that these grounds were pretextual. "An employer's good faith *belief* that an employee engaged in misconduct is a legitimate reason for terminating [him],

and the fact that the employer is actually wrong is insufficient to show that the alleged misconduct is a pretext for discrimination." *Id.* at *9 (emphasis in original) (citing *Agugliaro v. Brooks Bros., Inc.*, 927 F. Supp. 741, 747 & n. 5 (S.D.N.Y.1996)). Plaintiff also claims that Halliday's recollection of Plaintiff's performance record is too weak to be relied upon because he is unable to pinpoint when he received reports of Plaintiff's poor work performance and whether he documented the complaints. This argument is belied by the sworn testimony of the employees who confirmed that they relayed these reports to Halliday. (*See* Linares Dec. at ¶¶ 3–5); (Koran Dep.[17] at 19–21). Thus, Plaintiff has failed to show that Defendants' proffered basis for Plaintiff's termination was pretextual.

Accordingly, Plaintiff's discrimination claims pursuant to Title VII, NYSHRL and § 1983 are dismissed.

## C. Retaliation Under § 1983

Plaintiff alleges that Defendants retaliated against him for cooperating with Aure's investigation into the anonymous complaint against the Grounds Department's supervisors. (Docket No. 1 at 13). Defendants seek dismissal of this claim on the grounds that the Equal Protection Clause does not support a claim for retaliation under § 1983. (Def. Br. at 26). Defendants ignore the Second Circuit's authority on this issue. In *Vega v. Hempstead Union Free School District*, the Second Circuit settled the ambiguity in its case law with respect to the viability of § 1983 retaliation claims and held that "retaliation claims alleging an adverse action because of a complaint of discrimination are actionable under § 1983." 801 F.3d 72, 82 (2d Cir. 2015). The Second Circuit recognized that "retaliation is a form of discrimination," and when an employer "retaliates against an employee because he complained of discrimination, the

---

[17] Refers to Michael Koran's deposition transcript. (Docket No. 41-12).

retaliation constitutes intentional discrimination against him for purposes of the Equal Protection Clause." *Id.*

Evaluating Plaintiff's retaliation claim under the controlling case law, the Court finds that Plaintiff's § 1983 retaliation claim fails. "[O]nce action under color of state law is established, 'the elements of a retaliation claim based on an equal protection violation under § 1983 mirror [the elements of a retaliation claim] under Title VII.'" *Anderson v. City of New York, Health & Hosp. Corp.*, No. 16-CV-01051(GBD)(KHP), 2017 WL 9538862, at *14 (S.D.N.Y. Jan. 19, 2017), *report and recommendation adopted*, 2017 WL 3251603 (S.D.N.Y. July 31, 2017) (quoting *Vega*, 801 F.3d at 91). Thus, retaliation claims are subject to the *McDonnell Douglas* burden shifting framework. *See Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). To establish a *prima facie* case of retaliation, Plaintiff must prove that "(1) he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) (citation and internal quotation marks omitted).

Here, the record fails to establish a *prima facie* case of retaliation. Plaintiff argues that he participated in a protected activity when Aure interviewed him as a part of his investigation into the anonymous complaint. (Docket No. 1 at ¶ 72). However, the record does not establish that any of the Defendants were aware of Plaintiff's meeting with Aure. (*See* Def. Br. at 37–38). Aure testified that he did not discuss the investigation with anyone while it was pending, nor did he disclose the substance of Plaintiff's interview until well after Plaintiff's termination. (Def. 56.1 at ¶¶ 51, 61). Plaintiff's conclusory allegation that Defendants were aware of his participation in the investigation is not supported by any evidence in the record. Thus, because

Plaintiff failed to demonstrate that Defendants, except Aure, were made aware of the alleged protected activity, Plaintiff has failed to establish a *prima facie* case of retaliation against Defendants Halliday, Schwarz, Farrell, Espinales and Tighe. *See Mendoza v. SSC & B Lintas, New York*, 913 F. Supp. 295, 301 (S.D.N.Y.1996) (dismissing retaliation claim where supervisor was unaware of plaintiff's complaint at the time the adverse employment action was taken). Moreover, because Defendants Halliday, Schwarz, Farrell, Espinales and Tighe were unaware of Plaintiff's cooperation with the investigation, Plaintiff has not established a causal connection between the protected activity and his termination. *See Uddin v. City of New York*, 427 F. Supp. 2d 414, 433 (S.D.N.Y. 2006) (finding no causal connection where the defendant was not aware of the protected activity prior to the adverse action).

Although Defendant Aure knew about Plaintiff's participation in a protected activity, there is no evidence that Aure had any involvement in Plaintiff's termination. "[L]iability for an Equal Protection Clause violation under § 1983 requires personal involvement by a defendant, who must act with discriminatory purpose." *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012). To hold an individual liable for retaliatory conduct under § 1983, there must be "'some affirmative link to causally connect the actor with the discrimination action,' such that the claim is 'predicated on the actor's personal involvement.'" *Hagan v. City of New York*, 39 F. Supp. 3d 481, 514 (S.D.N.Y. 2014) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)). "Personal involvement includes not only direct participation but also 'an official's (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates.'" *Id.*

(quoting *Hayut*, 352 F.3d at 744). Here, the Complaint does not allege that Aure was involved in terminating Plaintiff's probationary employment. Nor does the record suggest that Aure participated in Plaintiff's termination proceedings, directly or indirectly. At the time, Aure was the Chief Diversity Officer, Title IX Coordinator, and Affirmative Action Officer at SUNY Purchase. (Def. 56.1 at ¶ 8). In that capacity, he was not responsible for recommending or reviewing Plaintiff's employment status or termination. (*See* Aure Dep.[18] at 7); (Aure Dec.[19] at ¶ 6). Thus, Plaintiff's retaliation claim against Aure must be dismissed for lack of personal involvement.

Accordingly, Plaintiff's § 1983 retaliation claim against the individual defendants is dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. The Clerk is respectfully requested to terminate the pending motion, (Docket No. 40), and close the case.

Dated:   July 17, 2019
         White Plains, New York

                                        SO ORDERED:

                                        _Judith C. McCarthy_____

                                        JUDITH C. McCARTHY
                                        United States Magistrate Judge

---

[18] Refers to Joel Aure's deposition transcript. (Docket No. 41-7).

[19] Refers to the Declaration of Joel Aure. (Docket No. 44).